[Cite as *State v. Tucker*, 2025-Ohio-923.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                       No. 113843

v. :

CHRISTOPHER TUCKER, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-03-437731-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, *for appellee.*

Kimberly Kendall Corral and Gabrielle M. Ploplis, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Christopher Tucker[1] ("Tucker") appeals the trial court's denial of his motion for leave to file a motion for a new trial following his 2003 conviction of aggravated murder and sentence of 23 years to life. After a thorough review of the facts and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The facts of this case have been previously summarized in Tucker's direct appeal. *State v. Tucker*, 2004-Ohio-5380, ¶ 2-10 (8th Dist.) ("*Tucker I*"). Following this court's affirmance of his conviction for aggravated murder, he filed a petition for postconviction relief and a motion for a new trial, premised on a trial witness, Joseph Fussell ("Fussell"), recanting his testimony that identified Tucker as the shooter. The trial court determined that the petition for postconviction relief was untimely and that a recantation of one trial witness, when one other witness identified Tucker as the shooter, was insufficient to grant a new trial. Tucker filed a motion for a delayed appeal after nearly two years, which this court denied. *State v. Tucker*, 8th Dist. Cuyahoga No. 88254 (July 6, 2006).

{¶ 3} In 2007, Tucker returned to the trial court and filed a successive petition for postconviction relief and a motion for a new trial. In support of these

---

[1] The original indictment in this case identifies the defendant as "Christoph Tucker." For ease of discussion, we refer to him as "Christopher Tucker" since that is how his name is designated in his appellate brief.

motions, he attached an affidavit from a witness, D.R., who asked that they not be publicly identified. D.R. averred that she was inside of the bar at the time of the shooting, did not know Tucker or his family, and was a neutral observer of the events. The trial court denied these motions without holding an evidentiary hearing; Tucker appealed. *See State v. Tucker*, 2008-Ohio-5746 (8th Dist.) ("*Tucker II*"). This court reversed the trial court's denial, finding that it "abused its discretion in not granting a hearing on Tucker's petition" and abused its discretion "in finding that Tucker did not demonstrate an adequate excuse for the delay in filing his second petition." *Tucker II* at ¶ 28, 34.

{¶ 4} Before the trial court held an evidentiary hearing as required by this court in *Tucker II*, Tucker filed another appeal from the trial court's denial of his first petition for postconviction relief and motion for a new trial, arguing that his appeal was timely filed because he had never been served with notice of the trial court's judgment. This court accepted the appeal. *State v. Tucker*, 2011-Ohio-4092 (8th Dist.) ("*Tucker III*"). Ultimately, this court affirmed the trial court's decision denying the first petition for postconviction relief and motion for new trial but remanded the matter for the trial court to conduct the hearing that was ordered in *Tucker II*.

{¶ 5} While *Tucker III* was pending in this court, and before the evidentiary hearing was held, Tucker filed several supplemental motions that included affidavits signed by numerous other witnesses: John Blue, Arthur Storey, Khaalis Miller, and Joe McLemore. However, after *Tucker III* was decided, the trial court denied all of

Tucker's supplemental motions, reasoning that these supplements were barred by res judicata, were untimely, and did not meet the Crim.R. 33 standard.

{¶ 6} On April 16, 2012, the trial court conducted the evidentiary hearing and D.R. testified in support of her affidavit. She stated that in January 2007, she saw Tucker's photograph in a posted flier in January 2007 that requested information from anyone who was at the bar on the evening of the shooting. She testified that she kept the flier but neglected to contact the attorney listed on the flier until after Tucker's trial.

{¶ 7} Following this hearing, the trial court denied Tucker's postconviction petition and motion for a new trial, finding D.R.'s testimony problematic and concluding that her identification of Tucker was suspect. Tucker again appealed this judgment. *State v. Tucker*, 2013-Ohio-2527 (8th Dist.) ("*Tucker IV*"). This court affirmed, finding that competent and credible evidence supported the trial court's finding that D.R. was "an incredible witness." *Id*. at ¶ 45.

{¶ 8} Approximately one year later, Tucker filed an application for DNA testing in the trial court, which was eventually denied by the trial court due to the unsuitability of the samples.

{¶ 9} In July 2022, Tucker filed a motion for leave to file a motion for new trial. This motion alleged that Tucker discovered "new evidence in the form of a new witness statement" from Talbert Glenn, who averred that he knew Fussell and did not see him on the scene on the evening of the shooting and that he witnessed a male who was not Tucker shoot the victim.

**{¶ 10}** The full text of Glenn's affidavit provides:

I, Talbert D. Glenn, swear that I voluntarily provided this statement to Tom Pavilish. On May 22nd 2003 I arrived at Whatley's lounge at around 9:00 p.m. I went to meet a friend named Rasheed to talk. Upon my short visit I was told that the small celebration was for a guy at the bar named Tim-Dawg. There was no conflicts in the bar and by everyone socializing nobody noticed this guy peek in and leave back out. The guy had his eye on Tim and his date. He was later seen hopping out of a tan colored truck pulling a automatic weapon and firing.

This happened about 10 minutes after the shooter looked in the bar. As Tim and the female exited the bar holding hands she fled to Delmont Ave as I stood still. The shooter was a brown skinned 6'4" tall male with a brown work suit. After the shooting he also ran around the same corner as the getaway truck and Tim's girlfriend.

I was approx. about 15 ft. from the victim and when the truck pulled up the shooter hopped out and said whats up now and started shooting the victim to his body.

I closed his eyelids and tried to get help from the bar. The police arrived covered his body and left, they never asked anything about this shooting. I know Joseph Fussell and I didn't see him during or after this incident.

I do not know Chris Tucker. I haven't been contacted on his behalf.

I am voluntarily coming forward because I was unaware that the wrong person was convicted of the crime.

**{¶ 11}** The motion also included details that purportedly now questioned Fussell's credibility. Particularly, Tucker argued that since trial, Fussell was a witness for the State to another aggravated murder case, *State v. Edwardlee Johnson*, Cuyahoga C.P. No. CR-12-564315, that also involved "a shooting which Fussell saw under similar circumstances to the case in question." Tucker argues that Fussell's recantation in 2004 and Fussell's similar testimony in *Johnson,* taken

together, suggest that Tucker could not have discovered Fussell's "unreliability" until after the *Johnson* trial ended in 2012.

{¶ 12} The State did not respond, and in September 2022, Tucker filed a motion asking the court to grant his unopposed motion for leave, which prompted the State to file a motion to leave to respond, and the State eventually filed its brief in opposition on November 14, 2022.

{¶ 13} In March 2024, the trial court denied Tucker's motion for leave to file a motion for new trial, stating, "Defendant failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering the evidence accompanying his motion." It is from this denial that Tucker now appeals, assigning four errors for our review:

I.      The trial court abused its discretion in when [sic] it found that appellant Tucker failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering the evidence accompanying his motion.

II.     The trial court abused its discretion when it failed to hold an evidentiary hearing on unavoidable prevention.

III.    The trial court abused its discretion where it cannot be established that the court applied the correct legal standard.

IV.     The trial court abused its discretion when it failed to hold an evidentiary hearing where the state did not timely oppose appellant's motion for leave.

## II. Law and Analysis

{¶ 14} We elect to discuss all of Tucker's assigned errors together for ease of discussion.

{¶ 15} The denial of a motion for leave to file a motion for new trial is reviewed for an abuse of discretion. *State v. Johnson*, 2022-Ohio-523, ¶ 32 (8th Dist.), citing *State v. Hill*, 2020-Ohio-102, ¶ 13 (8th Dist.). The decision on whether to hold a hearing on the motion is also reviewed for an abuse of discretion. *State v. Phillips*, 2017-Ohio-7164, ¶ 21 (8th Dist.), citing *State v. Sutton*, 2016-Ohio-7612, ¶ 13 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 16} Crim.R. 33(A)(6) provides that a new trial may be granted upon motion of the defendant

> [w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶ 17} Crim.R. 33(B) provides that when a defendant wishes to file a motion for new trial based on newly discovered evidence more than 120 days after a verdict is rendered, the defendant must seek leave from the trial court to file a delayed motion. *State v. Hale*, 2019-Ohio-1890, ¶ 9 (8th Dist.). To obtain leave, the defendant must clearly and convincingly demonstrate that they were unavoidably prevented from timely filing their motion for a new trial. *Id*. "'Clear and convincing'

evidence is that 'measure or degree of proof' that 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Allen*, 2024-Ohio-970, ¶ 21 (8th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 18} The sole question before the trial court "when considering whether to grant a motion for leave based on newly discovered evidence is whether the defendant has established by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence at issue within the time frame provided," not the merits of the proposed motion for a new trial. *Id.* at ¶ 22, citing *State v. Hatton*, 2022-Ohio-3991, ¶ 30, 33; *Hale* at ¶ 20. A defendant is entitled to a hearing on his or her motion for leave to file a motion for new trial only if the submitted documents demonstrate that the defendant was unavoidably prevented from timely discovering the grounds for the motion. *Allen* at ¶ 23.

{¶ 19} A defendant may make the required showing that he or she was "unavoidably prevented" from filing a timely motion for a new trial based on newly discovered evidence by demonstrating that he or she was previously unaware of the evidence on which the motion relies and could not have discovered it within the required time by exercising reasonable diligence. *Id.* at ¶ 26, citing *State v. Johnson*, 2024-Ohio-134, ¶ 18; *State v. Bethel,* 2022-Ohio-783, ¶ 21; *State v. McFarland*, 2022-Ohio-4638, ¶ 16 (8th Dist.).

{¶ 20} Here, Tucker contends that he was unavoidably prevented from discovering such evidence and could not have discovered such evidence, even in the

exercise of reasonable diligence. He specifically argues that Glenn "only now comes forward of his own volition, having become aware that the wrong person was convicted of the crime." Glenn averred the same in his affidavit, leading Tucker to argue that "[t]he record conclusively demonstrates that in fact Glenn did not offer his statement within the 120 days prescribed by Crim.R. 33(B)" because Glenn did not come forward with his statement until roughly 18 years since the murder and trial. Tucker claims that he "had no control over Glenn's sudden determination to come forward with his firsthand account of the shooting[.]" He further argues that he has been diligent in maintaining his innocence since the day he was convicted, that Glenn was previously unknown by police, and that Tucker did not know Glenn, which, taken together, indicate that he was "unavoidably prevented" from discovering Glenn. Regarding the information concerning Fussell's involvement in a shooting under similar circumstances, the only evidence submitted was the unsworn allegations of Tucker's counsel. Tucker did not submit any documents, trial transcripts, affidavits, or other evidence exhibiting this point beyond his own speculation and conclusory allegation that the testimony was similar. Moreover, Fussell's credibility was called into question in 2004 when he drafted an affidavit purportedly recanting his trial testimony; this issue was already resolved in *Tucker II* and is thus barred by res judicata.

{¶ 21} The Ohio Supreme Court has held that the "unavoidably prevented" requirement requires a showing that the facts underlying the motion were

"incapable of being avoided or evaded." *Johnson*, 2024-Ohio-134 at ¶ 24.[2] Moreover, the Ohio Supreme Court has noted that, "[t]he light that an affidavit's date sheds on that issue is dim, at best. A date merely reveals when the affidavit was executed or provided, not when the testimony it contains became available." *Id.* at ¶ 25. It is incumbent upon the petitioner to "submit evidence of specific facts beyond the supporting affidavit's date to explain why the petitioner was unable to timely obtain an affidavit[.]" *Id.* at ¶ 27.

{¶ 22} We find that Glenn's affidavit fails to make the required showing that Tucker was unavoidably prevented from discovering Glenn's statement. The affidavit does not indicate where and how Glenn was discovered. It does not contain any information suggesting that Glenn had remained quiet or was unable to speak for some reason until recently.

{¶ 23} To the extent Tucker brings up the credibility of the evidence, we note that the credibility of the contents in the affidavit is not relevant at this stage where the sole issue is whether leave to file a motion for new trial should have been granted. *See, e.g.*, *State v. Minifee*, 2024-Ohio-64, ¶ 21 (8th Dist.).

---

[2] *Johnson* pertained to an untimely postconviction-relief petition filed pursuant to R.C. 2953.23. The Ohio Supreme Court has held that the "unavoidably prevented" requirement in Crim.R. 33(B) is identical to the "unavoidably prevented" standard as espoused in R.C. 2953.23(A)(1), governing postconviction-relief petitions. As such, case law cited herein dealing with our analysis of the "unavoidably prevented" requirement may pertain to either Crim.R. 33(B) or R.C. 2953.23(A)(1). *State v. Bethel*, 2022-Ohio-783, ¶ 59.

{¶ 24} The affidavit simply fails to satisfy the unavoidably prevented requirement regarding both Glenn's affidavit and Fussell's testimony. Accordingly, the trial court did not abuse its discretion in denying Tucker's motion for leave to file a motion for new trial or conducting a hearing prior to denying his motion.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MICHAEL JOHN RYAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR